UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M., | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-2389 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Acting Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher M. appeals the decision of the Social Security Administration denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3). The parties have filed cross motions for summary judgment.[1] As detailed below, Plaintiff's motion for summary judgment [dkt. 21] is GRANTED; Defendant's motion for summary judgment [dkt. 28] is DENIED. The Court hereby remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

**1. Procedural History**

On June 6, 2016, Plaintiff protectively filed for Supplemental Security Income, alleging a disability onset date of May 1, 2015. [R. 15.] An administrative hearing was held on December 9, 2019. [R. 37-57.] On January 16, 2020, Administrative Law Judge ("ALJ") Cindy Martin issued an unfavorable decision. [R. 15-28.] Plaintiff requested Appeals Council review, which was denied on April 16, 2020. [R. 1-6.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff, through counsel, filed the instant action on April 17, 2020, seeking review of the Commissioner's decision. [Dkt. 1.]

---

[1] Plaintiff has filed a Brief in Support of Remanding the Case Back to the ALJ [dkt. 21], which the Court construes as a motion for summary judgment.

**2.     The ALJ's Decision**

The ALJ issued a written decision on January 16, 2020, following the five-step analytical process required by 20 C.F.R. § 404.1520. [R. 15-28.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date of September 1, 2008. [R. 17.] At Step Two, the ALJ concluded that Plaintiff had the severe impairments of bilateral carpal tunnel syndrome; obstructive sleep apnea; obesity; hypertension; hearing loss; post-traumatic stress disorder (PTSD); depression with psychotic features; schizophrenia; anxiety; learning disorder; and a personality disorder with antisocial personality traits. [*Id.*] At Step Three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [R. 17-20.] Prior to Step Four, the ALJ found that through the date of last insured, Plaintiff maintained the residual functional capacity ("RFC") to perform light work, but could never climb ladders, ropes or scaffolds; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could frequently reach, handle, finger and feel objects with both upper extremities; could have no more than occasional exposure to loud noise; could understand, remember, and carry out simple tasks and make simple work-related decisions, and deal with occasional changes in work processes and environment (no production rate pace, but end of the day goal is okay); and was to have no interaction with the general public, but may have occasional interaction with coworkers and supervisors (but no tandem tasks). [R. 20-26.] At Step Four, the ALJ concluded Plaintiff had no past relevant work. [R. 26.] Finally, at Step Five, the ALJ, relying on the testimony of the vocational expert ("VE"), determined that Plaintiff would have been able to perform the requirements of laundry sorter and office helper, which existed in significant numbers in the national economy. [R. 27.] Accordingly, the ALJ found Plaintiff not disabled as defined by the Social Security Act. [R. 27-28.]

**3. Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last

insured to be eligible for disability insurance benefits. A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**4.   Analysis**

Plaintiff alleges that at Step Five of her decision, the ALJ failed to investigate and resolve the apparent conflict between the Vocational Expert's ("VE") statements about jobs Plaintiff could perform and the Dictionary of Occupational Titles ("DOT") (specifically re Plaintiff's mathematical abilities), leading to a decision that is not based on substantial evidence. [Dkt. 21, p. 3-8.] The Court agrees. Specifically, the problem in this case is that the ALJ did not seem to consider Plaintiff's potentially profound deficiencies in mathematical reasoning, which may have disqualified him from performing any of the jobs the VE claimed Plaintiff could do. Because the ALJ did not contemplate Plaintiff's problems with math, the questions she posed to the VE failed to take into account how those issues would affect Plaintiff's job prospects (or, more accurately, a hypothetical person with Plaintiff's RFC's job prospects). As a result, the ALJ's conclusion that Plaintiff could work as a laundry

sorter and office helper is not based on substantial evidence because neither she nor the VE analyzed how Plaintiff's poor math skills would affect his ability to perform those jobs.

The Commissioner bears the burden of proof at Step Five of the inquiry into a claimant's disability; at this step, the Commissioner must present evidence establishing that the claimant can perform work that is widely available. 20 C.F.R. § 404.1560; *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The Commissioner often relies on the testimony of a VE to meet this burden. *Weatherbee*, 649 F.3d at 569. Social Security Ruling ("SSR") 00-4p, which clarifies standards for VEs providing evidence before ALJs in disability decisions, notes that "an ALJ has an affirmative responsibility to ask whether a VE's evidence conflicts with information provided in the DOT before relying on that evidence to support a determination of nondisability." SSR 00-4p at 4; *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008). Furthermore, SSR 00-4p requires ALJs to investigate and resolve discrepancies when the VE's testimony appears to conflict with the DOT. SSR 00-4p; *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

An "apparent conflict" exits where it is "so obvious that the ALJ should have picked up on [it] without any assistance." *Weatherbee*, 649 F.3d at 571-72; *Overman*, 546 F.3d at 463. However, the threshold for "apparent conflict" requiring ALJs to further examine VE testimony is not a bright line. *Compare Prochaska,* 454 F.3d at 736 (determining that inconsistencies between jobs described by VE as possible for claimant based on evidentiary record and DOT's definitions, in light of claimant's physical or mental restrictions, created apparent conflict) *with Weatherbee*, 649 F.3d at 571-72 (finding minor discrepancies in job titles described by VE and DOT insufficient to create apparent conflict). The Court declines to conclusively determine what constitutes an "apparent conflict." However, the Court finds Plaintiff's SSR 00-4p (second prong) argument persuasive;[2] without clarification about the

---

[2] Contrary to the Commissioner's argument that Plaintiff has raised this issue too late, "a claimant's failure to raise

4

mathematical development levels required by the DOT for the jobs provided in the VE's statements, the ALJ's decision is based on unclear and potentially erroneous VE statements. As a result, the ALJ's pattern of reasoning at Step Five of the disability determination cannot be logically traced.

At Plaintiff's disability hearing, the VE identified two jobs she believed to be consistent with the RFC limitations provided by the ALJ: laundry sorter (DOT #361.687-014) and office helper (DOT #239.567-010). The position of laundry sorter has a mathematical development level of 1; the position of office helper has a mathematical development level of 2.

The DOT defines level-one math proficiency as the ability to:

- Add and subtract two digit numbers.
- Multiply and divide 10's and 100's by 2, 3, 4, 5.
- Perform the four basic arithmetic operations with coins as part of a dollar.
- Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

Level-two math proficiency includes the ability to:

- Add, subtract, multiply, and divide all units of measure.
- Perform the four operations with like common and decimal fractions.
- Compute ratio, rate, and percent.
- Draw and interpret bar graphs.
- Perform arithmetic operations involving all American monetary units.

United States Dept. of Labor, *Dictionary of Occupational Titles*, Appendix C (4th ed. 1991).

Meanwhile, Plaintiff's math skills appear to be at a far lower level than either of these levels. Specifically, not only did the ALJ recognize Plaintiff's learning disorder was a severe impairment (*i.e.*, it significantly limits Plaintiff's ability to perform basic work activities, *Million v. Astrue*, 260 F. App'x 918, 922 (7th Cir. 2008)), but the ALJ found that Plaintiff had a marginal education, defined as 6th

---

a possible violation of SSR 00-4p at the administrative level does not forfeit the right to argue later that a violation occurred." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

grade or less (Plaintiff was in special education classes from 1st through 6th grades – failing two of those years – before dropping out of school in 7th grade). [R. 17, 26 (citing 20 C.F.R. § 416.964(b)(2)), 408.] Additionally, on October 24, 2017, Dr. Ana A. Gil, M.D., S.C., a consultative psychiatrist, administered a psychiatric examination to Plaintiff.[3] [R. 407-11.] The results of the calculation portion of Dr. Gil's examination demonstrated that Plaintiff did not know how to perform multiple calculations: Plaintiff required his fingers for simple addition and subtraction calculations, and he was unable to perform multiplication calculations or recite serial 7s. [R. 409.] Although Dr. Gil determined Plaintiff was able to handle his own finances [R. 411], Plaintiff himself testified he is not be able to do the math to determine the proper amount of change to get back when making a purchase and, because he finds this embarrassing, he sometimes has others pay for his purchases.[4] [R 44.] All this suggests Plaintiff may struggle to perform jobs the DOT designates as requiring level-one math skills. *See Williams v. Saul*, 782 F. App'x 488, 492-93 (7th Cir. 2019) (remanding based on evidence that claimant's minimal math skills created a "significant conflict" between VE's testimony that Claimant could perform certain jobs – which the ALJ relied on – and the mathematical proficiency of those positions under the DOT).

Although the Commissioner argues Plaintiff possessed the basic math skills needed to be a

---

[3] Problematically, the ALJ does not assess or assign a weight to Dr. Gil's opinion at all in her decision, failing to even mention the doctor's name yet citing her report (Exhibit 6F [R. 407-11]) on seven occasions. [*See* R. 20, 22, 25-26.] *See Smith v. Astrue*, 2011 WL 722539, 31 (N.D. Ill. Feb. 22, 2011) ("cataloguing" evidence "is no substitute for analysis or explanation"). Under 20 C.F.R. § 416.927(c), the Commissioner "will evaluate every medical opinion we receive." Although the ALJ proclaimed she "considered opinion evidence in accordance with the requirements of 20 CFR 416.927" [R. 21], she clearly did not. By failing to discuss or assign weight to Dr. Gil's opinion in her Psychiatric Examination report, the Court is deprived "of any means to assess the validity of the [ALJ's] reasoning process," particularly with respect to the ALJ overlooking Dr. Gil's report of Plaintiff's exceedingly poor math skills. *Moore v. Colvin*, 743 F.3d 1118, 1123-24 (7th Cir. 2014); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (finding error when ALJ fails to mention relevant evidence because "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."). If the ALJ had properly considered Dr. Gil's opinion in conjunction with Plaintiff's testimony and his severe learning disorder, she may well have come to a different conclusion regarding the availability of jobs Plaintiff was able to perform, as a math reasoning level commensurate with Plaintiff's abilities may well have ruled out widely available employment. Accordingly, this constitutes a separate basis for remand.

[4] Ultimately, the ALJ never resolves the discrepancy between Plaintiff's testimony and any conflicting report/assessment regarding his ability to handle his own finances, which is troubling in light of his sub-par math skills discussed by Dr. Gil and his severe learning disorder assessed by the ALJ.

laundry sorter (citing the checkbox portion of the Adult Function Report filled out by Plaintiff's mother, as well as two other pieces of evidence *not* relied on by the ALJ)[5] [dkt. 29, p. 5], this is not an appropriate fact question for the Court to resolve as that is not the Court's role here. (Even if Plaintiff's mathematical abilities synced with a level-one mathematical development position, Defendant does not address whether Plaintiff might possess the level-two mathematical development required for an office helper job, the answer to which might significantly erode the pool of jobs available to Plaintiff.) Whether Plaintiff possesses the requisite math skills or not, the ALJ simply left a void between the seeming mismatch between Plaintiff's mathematical skills and those listed for the jobs identified by the VE.

At this junction, the Court would be remiss not to note that the Seventh Circuit has pointed out that "jobs designated as requiring level-one math skills may not actually require the listed abilities." *Williams*, 782 F. App'x 488, 492 (7th Cir. 2019) (citing SSR 00-4p (explaining that the DOT "lists maximum requirements"))[6]. But the ALJ may *only* set aside the DOT's job requirements based on another "reliable source of occupational information." *Id.*; *accord Overman*, 546 F.3d at 464. Here, the record contains no other "reliable source of occupational information" because the ALJ did not, for example, ask the VE whether the DOT's listed math skills were real-world requirements. *See Williams*, 782 F. App'x 492-93 (remanding based on "significant conflict" between claimant's minimal math skills and mathematical proficiency required under the DOT). Nor did the ALJ "ask the VE about the potential for conflict between claimant's math abilities – or rather, lack thereof – and the requirements of the DOT positions…"[7] *Darius W. v. Saul*, 2020 WL 3469218, at *4 (N.D. Ill. June 25, 2020).

---

[5] The Court's review is limited to the reasons articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

[6] At the same time, the Court "acknowledges the lack of authority on the issue of mathematical development levels in the DOT." *Darius W. v. Saul*, 2020 WL 3469218, at *4 (N.D. Ill. June 25, 2020) (awarding costs in case where Seventh Circuit found "significant conflict" between claimant's minimal math skills and mathematical proficiency required under the DOT.

[7] Plaintiff is wrong, however, that an ALJ must ask a claimant "how long you attended school and whether you are able to speak, understand, read, and write in English and do at least simple calculations in arithmetic." [Dkt. 21,

7

Ultimately, the ALJ failed to build a logical bridge between the evidence and findings in this case, leaving the Court unable to "assess the validity of the [ALJ's] reasoning process." *Moore*, 743 F.3d 1118, 1123-24. Thus, the ALJ's Step Five finding is not supported by substantial evidence and the case must be remanded. *Prochaska*, 454 F.3d at 736 (remanding where jobs the VE identified, "as defined by the DOT," required "capabilities that are beyond [the claimant's] limitations"). Because the Court remands on this basis, it need not reach the other bases of error alleged by Plaintiff.

5. **Conclusion**

For the reasons discussed herein, Plaintiff's motion for summary judgment [dkt. 21] is GRANTED; Defendant's motion for summary judgment [dkt. 28] is DENIED. The Court hereby remands this matter for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: January 31, 2022

_____
United States Magistrate Judge
Susan E. Cox

---

p. 6 (citing 20 C.F.R. § 416.964(b)(6)).] Plaintiff has misinterpreted a regulation whose purpose was satisfied when the Social Security Agency asked Plaintiff for this information on a form during the initial application process. It need not be the ALJ who solicits this information from a claimant at an Administrative Hearing; it is enough this information exists in the Administrative Record for the ALJ to consider even though it was sought at an earlier stage of the process of a claimant's disability application.